IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| VICTOR McRAE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| TELFAIR COUNTY, GEORGIA; CHRIS | * | |
| STEVERSON, Individually and in | * | |
| His Official Capacity as Sheriff | * | |
| of Telfair County; JOHN and JANE | * | |
| DOES 1-10 as employees; BOBBY | * | CV 318-077 |
| MCLEMORE, Individually and in | * | |
| His Official Capacity as Sheriff | * | |
| of Ben Hill County; BEN HILL | * | |
| COUNTY, GEORGIA; JOHN and JANE | * | |
| DOES 1-10 as employees; LYNN | * | |
| SHEFFIELD, Individually and | * | |
| in His Official Capacity as | * | |
| Sheriff of Dodge County; | * | |
| JOHN and JANE DOES 1-10, as | * | |
| employees; and DODGE COUNTY, | * | |
| GEORGIA, | * | |
| | * | |
| Defendants. | * | |

O R D E R

Before the Court are three motions for summary judgment filed by: Ben Hill County, Georgia and Bobby McLemore (doc. no. 53); Dodge County, Georgia and Lynn Sheffield (doc. no. 66); and Telfair County, Georgia and Chris Steverson (doc. no. 68) (collectively, the "Moving Defendants"). The Clerk has given Plaintiff Victor McRae notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the

notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motions have been fully briefed and are ripe for decision. For the following reasons, the motions are granted in part.

## I.   BACKGROUND

A. General Background

On or around September 18, 2016, Plaintiff slipped and fell in the shower at the Telfair County Jail. (See McRae Dep., Doc. No. 54, at 20-21.) After the fall, Plaintiff complained of numbness in his leg to jail officials and was transported to the Dodge County hospital on September 22 and 23, 2016. (See id. at 26, 29.) He received an x-ray which appeared normal, was given a prescription for Motrin, and released. (See Dodge County Hospital Medical Records, Doc. No. 53-3, at 72-73.) Sheriff Steverson's only interaction with Plaintiff was while Plaintiff was receiving medical care. (See McRae Dep. at 28-30.)

Plaintiff did not return to the Telfair County Jail. (See id. at 33.) Instead, he was transferred to the Dodge County Jail to be placed under supervision by medical personnel onsite, where he was seen by nursing staff on multiple occasions. (See id. at 33-34, 46.)

Following another transfer to the Coffee County Jail, Plaintiff was released from Coffee County on October 13, 2016, but

went straight to the Ben Hill County Jail because of a probation hold. (See id. at 47-48.) In late October of 2016 while at Ben Hill County Jail, Plaintiff's condition deteriorated, and he was eventually airlifted to Grady Memorial Hospital in Atlanta following treatment at Dorminy Hospital. (See id. at 100-01; Grady Record, Doc. No. 53-8.) It was not until his visit to Dorminy that Plaintiff had contact with Sheriff McLemore. (See McRae Dep. at 101-02.)

At the time relevant to the litigation, Bobby McLemore was the Sheriff of Ben Hill County; Lynn Sheffield was the Sheriff of Dodge County; and Chris Steverson was the Sheriff of Telfair County. On September 14, 2018, Plaintiff filed suit in the Superior Court of Dodge County, Georgia against each Sheriff in their individual and official capacities as well as their respective counties – among other defendants. (See generally Doc. No. 1.)

Plaintiff asserts state and federal law claims against the Moving Defendants for negligence, negligent infliction of emotional distress, violations of his constitutional rights under 42 U.S.C. § 1983, and failure to furnish medical care under O.C.G.A. §§ 42-5-2, 42-4-4, and 42-4-32. (See generally Compl., Doc. No. 1-1.) Beyond the Moving Defendants, the Complaint named thirty John and Jane Does – ten for each county. (See id.) Defendants removed to this Court pursuant to 28 U.S.C. §§ 1331 and

1441. (See Notice of Removal, Doc. No. 1, at 2-3.) Certain facts relevant only to a particular Moving Defendant are set forth in the following subsections.

B. Telfair County and Sheriff Steverson

Telfair County pays Dodge County to house and care for its inmates with medical conditions. (See Steverson Dep., Doc. No. 70-1, at 15-16.) Telfair County inmates receiving treatment in Dodge County are still considered Telfair County inmates, and Telfair County retains control over those inmates. (See Moon Dep., Doc. No. 70-2, at 33-34.)

C. Dodge County and Sheriff Sheffield

Dodge County contracts with Southern Correctional Medicine to provide medical care to its inmates. (See Southern Correctional Medicine Agreement, Doc. No. 66-4.) Plaintiff has not sued Southern Correctional Medicine. Nurse notes from Southern Correctional Medicine indicate that Plaintiff received extensive medical observation, examination, and treatment for his numbness complaints. (See generally Southern Correctional Medicine Records, Doc. No. 66-10.)

Plaintiff never had personal contact or communication with Sheriff Sheffield. (See McRae Dep. at 64-65.)

D. Ben Hill County and Sheriff McLemore

Inmates booked into the Ben Hill County Jail go through a two-part medical screening. (See Stokes Dep., Doc. No. 55, at 18.)

4

First, an officer asks the inmate general questions. (See id. at 18-19.) Second, a member of the medical staff contracted to work with the Ben Hill County Jail asks more detailed and potentially confidential questions. (See id.; Winn Dep., Doc. No. 56, at 13-14.) The screening process can take up to three days if an inmate is booked on a weekend or holiday. (See Stokes Dep. at 20.)

Ben Hill County Jail policy sets out guidelines for the acceptance of inmates who are in obvious need of medical attention, and any such inmate must be cleared by a medical provider before booking. (See McDonald Dep., Doc. No. 57, at 33-34.) Plaintiff was booked into the Ben Hill County Jail on October 13, 2016 without medical clearance despite his medical questionnaire stating his need for medical care. (See McLemore Dep., Doc. No. 59, at 13-14.)[1] Plaintiff saw a nurse on October 16, 2016, but did not see a doctor until October 21. (McRae Dep. at 97-98.)

## II.   JURISDICTION

On October 18, 2018, this case was removed to this Court on grounds of both diversity and federal question jurisdiction. (See

---

[1] The cover pages of Sheriff McLemore's and James Hudson's deposition transcripts appear to have been switched, leading to incorrect docket entries for the respective transcripts. Sheriff McLemore's transcript is found at doc. no. 59, while Hudson's is found at doc. no. 63.

5

Notice of Removal ¶ 3.)[2] No motion for remand was filed by Plaintiff. Defendants removing to federal court bear the burden of establishing jurisdiction. See Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001) ("We reiterate that the burden of proving jurisdiction lies with the removing defendant.") Defendants' Notice of Removal asserts that both federal question and diversity jurisdiction exist. While federal question jurisdiction exists over Plaintiff's Section 1983 claims for deliberate indifference to serious medical need, it is not clear that 28 U.S.C. § 1332's $75,000 amount in controversy threshold is met for diversity jurisdiction over his state law claims. Williams provides guidance for district courts in such circumstances.

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Williams, 269 F.3d at 1319. The Complaint here does not state a particular damages figure. Instead it simply alleges (in terms familiar to Georgia lawyers) that damages are measured "by the enlightened conscience of an impartial jury." (See, e.g., Compl. ¶ 126.)

---

[2] This paragraph states, "This Court has jurisdiction in this matter on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ (sic) 1331 and § 1441(b) and on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332."

6

If the jurisdictional amount is not facially apparent from the complaint – as here – the court looks to the notice of removal. See Williams, 269 F.3d at 1319. Defendants' Notice of Removal contains only a conclusory statement that diversity jurisdiction exists. (See Notice of Removal ¶ 3.) Although the jurisdictional amount is not "facially apparent," it is nonetheless conceivable that Plaintiff's claims could amount to more or less than $ 75,000. Therefore, the Parties are invited to submit additional "summary-judgment-type evidence" regarding the amount in controversy threshold. Williams, 269 F.3d at 1319; see also Dixon v. Whatley Oil & Auto Parts Co., 2018 WL 4275924, at *3 (M.D. Ga. Sept. 7, 2018); Pitts v. Ram Partners, 2018 WL 5786219, at *8 (M.D. Ala. Nov. 5, 2018).

Lack of service also implicates jurisdiction over the various Doe Defendants. The Complaint asserts negligence claims against the Doe Defendants. (See Compl. ¶¶ 51-71.) Apparently, some of the Doe Defendants were identified during discovery, but Plaintiff did not attempt to develop his claims against them until he responded to the pending motions.[3] Plaintiff has not served these would-be defendants, and the time to do so has passed. See Fed. R. Civ. P. 4(m) (providing 90-day deadline to serve a defendant

---

[3] The Complaint does not describe the Doe Defendants in any identifiable way; it only states their alleged negligence in the broadest of terms. (See Compl. ¶¶ 51-70.)

7

absent showing of good cause). Neither has Plaintiff amended his Complaint to name the Doe Defendants. "Once a plaintiff has had an opportunity to ascertain the true name of a John Doe defendant, the plaintiff must amend the complaint to name the defendant and effect service of process." Slaughter v. City of Unadilla, 2008 WL 345794, at *3 (M.D. Ga. Feb. 5, 2008) (dismissing claims against unserved Doe defendants at summary judgment stage) (citing James v. Mazda Motor Corp., 222 F.3d 1323, 1324 n.6 (11th Cir. 2000)). "Because the . . . Doe defendants have never been properly named and there has been no service of process, the Court currently has no jurisdiction over them." Id.

Because the statute of limitations has run on Plaintiff's claims against all Doe Defendants they are dismissed with prejudice. See Seegars v. Adcox, 258 F. Supp. 2d 1370, 1377 (S.D. Ga. 2002) (dismissing claims against Doe defendants following failure to serve process within Rule 4's deadline); O.C.G.A. § 9-3-33 (providing two-year limitations period for filing of personal injury actions). Apart from dealing with the Doe Defendants on procedural grounds, ruling is deferred on Plaintiff's state law claims.

### III. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

8

judgment as a matter of law." FED. R. CIV. P. 56(a). A "material" fact is one that could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), while a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). Any inferences drawn from the facts must be in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and the Court is to "resolve all reasonable doubts about the facts in favor of the non-movant." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court may not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court the basis for its motion by reference to materials in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may carry its initial burden in different ways depending on who bears the burden of proof at trial. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the movant bears the burden at trial, it must make an affirmative showing of an absence of a genuine issue of material fact. See id. The nonmovant must then respond with "evidence sufficient to call into question

the inference created by the movant's evidence on the particular material fact" to avoid summary judgment. Id. at 1116.

When the nonmovant bears the burden of proof at trial the movant has two options as to how it can carry its initial burden. Id. at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id. The nonmovant must then respond according to the manner used by the movant. The nonmovant must respond with "evidence sufficient to withstand a directed verdict" when the movant provided affirmative evidence. Id. When the movant demonstrates an absence of evidence, the nonmovant may either identify evidence in the record sufficient to withstand a directed verdict, or the nonmovant may come forward with additional evidence sufficient to withstand a directed verdict. Id. at 1116-17.

## IV.   DISCUSSION OF FEDERAL CLAIMS

As an initial note, none of Plaintiff's responses address the immunity arguments in the Moving Defendants' motions.[4] Instead, the responses focus on the alleged actions of numerous now-identified Doe Defendants. District courts in the Eleventh Circuit

---

[4] Plaintiff's responses do discuss immunities with respect to some of the now-identified Doe Defendants, but not the Counties or Sheriffs.

have found that when a non-movant fails to address a claim at summary judgment but responds to other arguments, the non-movant abandons the claims. See Johns v. CSX Transp., Inc., 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) (collecting cases). Therefore, where the Moving Defendants have carried their initial summary judgment burden and Plaintiff did not respond to their arguments, summary judgment will be granted.

A. Section 1983 Claims against the Counties and Sheriffs in Their Official Capacities

1. *Sheriffs in Their Official Capacities*

Sheriffs McLemore, Steverson, and Sheffield (the "Sheriff Defendants") assert Eleventh Amendment sovereign immunity against Plaintiff's Section 1983 claims against them in their official capacities. Eleventh Amendment sovereign immunity bars suit against government officials acting as "arms of the State." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)). The Eleventh Circuit has set out four factors for determining whether an entity or official is an "arm of the State" when carrying out a particular function:

> (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity.

Id. at 1309. Georgia district courts[5] applying these factors to a sheriff's provision of medical care to inmates have come to differing conclusions, but recent cases find sovereign immunity for this function.

The Middle District of Georgia has had frequent occasion to address the issue. In Youngs v. Johnson, 2008 WL 4816731 (M.D. Ga. Oct. 30, 2008), the court found that the first three Manders factors weighed in favor of treating a sheriff's provision of medical care to inmates as a county function, with the fourth factor implicating both the state and county. See id. at *7-8. It then concluded that the sheriff was not entitled to sovereign immunity on the plaintiff's Section 1983 claim and denied the sheriff summary judgment. See id. at *8. This was a standard conclusion before Lake v. Skelton (Lake I), 840 F.3d 1334 (11th Cir. 2017), *reh'g denied* 871 F.3d 1340 (11th Cir. 2017) (en banc). See, e.g., Lewis v. Whisenant, 2016 WL 4223721 (S.D. Ga. Aug. 09, 2016) (denying sovereign immunity to Georgia sheriff for claim arising from provision of medical care); Dukes v. Georgia, 428 F. Supp. 2d 1298 (N.D. Ga. 2006) (same).

The Middle District returned to the question following the Eleventh Circuit's decision in Lake I, which held that a Georgia

---

[5] "The issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law. But the federal question can be answered only after considering provisions of state law." Manders, 338 F.3d at 1308.

12

sheriff providing food to inmates acts as an arm of the state and enjoys sovereign immunity for that function. See Lake I, 840 F.3d at 1340-44. In Palmer v. Correct Care Sols., LLC, 291 F. Supp. 3d 1357 (M.D. Ga. 2017), the Middle District explained that although the Eleventh Circuit panel in Lake I addressed only the provision of food, the rationale for its holding would apply equally to the provision of medical care. See Palmer, 291 F. Supp. 3d at 1362 ("The panel's holding and rationale suggest that it would reach the same conclusion regarding a county sheriff's provision of medical care . . . to county jail detainees."). Palmer supported that interpretation with Judge Martin's dissent from the *en banc* decision not to rehear Lake I, in which she stated that under Lake I, "no person in a county jail will be able to sue his jailer (in the jailer's official capacity) for damages in federal court, even where the jailer violated the law by depriving the inmate of . . . medical care." See id. (quoting Lake v. Skelton (Lake II), 871 F.3d 1340, 1346 (11th Cir. 2017) (Martin, J., dissenting)).

A more recent Middle District decision elaborates on how Lake I's reasoning leads to sovereign immunity for sheriff's providing medical care. See Brooks v. Wilkinson Cnty., 393 F. Supp. 3d 1147, 1159 (M.D. Ga. 2019). As for the first Manders factor, "[the Eleventh Circuit] rejected Youngs's position that counties in Georgia delegate their duties under [O.C.G.A. § 42-5-2] to the county sheriff. Instead, the Brooks court explained, any duty a

13

county sheriff has under [O.C.G.A. § 42-5-2] is directly imposed by the State." Id. Brooks continues:

> The [Eleventh Circuit] then turned its attention to the second Manders factor and concluded that state law vests control over the provision of food in the State rather than the county. In reaching this conclusion, the Court relied on the fact that a State statute guaranteed inmates certain minimum standards of access to food while detained. Georgia has similar statutes guaranteeing inmates in jails minimum access to medical care. The final departure from the Youngs decision relates to the third Manders factor. While the Youngs court focused on whether the State or county funded the function at issue (the provision of medical care), the Lake Court focused on which entity funded the sheriff's office generally. Because the State is responsible for funding the sheriff's office, the Lake Court concluded that this factor weighed in favor of finding that the sheriff was entitled to Eleventh Amendment immunity.

Id. (citations omitted).

Returning to Palmer, the court conducted a renewed analysis of the four Manders factors in light of Lake I, but also found it "likely sufficient" to rely on the proposition that the provision of medical care and food to inmates are indistinguishable for Eleventh Amendment purposes. Palmer, 291 F. Supp. 3d at 1362.

This Court – without input from Plaintiff on the matter – finds Palmer and Brooks persuasive. Protected by Eleventh Amendment sovereign immunity in their official capacities as providers of medical care to inmates, the Sheriff Defendants are entitled to summary judgment.

*2. Counties*

Counties are not liable under Section 1983 via *respondeat superior* for deprivations of constitutional rights their employees commit. See Seegars, 258 F. Supp. 2d at 1377 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). Instead, a plaintiff must show that his or her rights were violated as a result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." Id. (quoting Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000), *cert. denied*, 531 U.S. 958 (2000)); see also Camp v. Corr. Med. Servs., Inc., 668 F. Supp. 2d 1338, 1350 (M.D. Ala. 2009) (stating, "[t]he Eleventh Circuit has articulated three ways a plaintiff can meet his or her burden under Monell" and listing the same three methods).

With respect to Telfair and Dodge Counties, Plaintiff has not identified any policy, custom, or practice to carry his burden under Monell. The only practice Plaintiff mentions is Sergeant Riddle's practice of providing copies of inmate medical documentation to her superior for any inmate she transported to a medical facility. (See Doc. No. 74, at 11; Doc. No. 75, at 11-12.) Even assuming that practice was "so pervasive and well-settled it assume[d] the force of law[,]" Plaintiff does not

attempt to show how the practice caused a deprivation of his constitutional rights.

Plaintiff does identify an official policy of Ben Hill County, namely, the policy prohibiting inmates in obvious need of medical attention from being booked into the jail. Plaintiff argues that he was booked into the Ben Hill County Jail in violation of that policy because he was unable to walk and incontinent. He argues the booking then led to his languishment in the jail without treatment. However, it was not the policy that caused his injury, but the violation of it.[6] Plaintiff would have to establish a practice or custom of <u>violating</u> the booking policy in order to survive summary judgment. He has not done so, and even if the violation of the Ben Hill County Jail booking policy deprived Plaintiff of his Eighth Amendment rights, "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." <u>Craig v. Floyd Cnty.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)). In summary, the policy Plaintiff identifies did not cause his injury, and he has failed to establish that the actual cause of his injury was an official policy, practice, or custom. Therefore, summary judgment is

---

[6] After all, the purpose of the booking policy is to ensure inmates receive medical treatment.

appropriate against Plaintiff on his Section 1983 claims against the County Defendants.

B. Section 1983 Claims against the Sheriffs in Their Individual Capacities[7]

Plaintiff's claims under Section 1983 against the Sheriff Defendants in their individual capacities are based on alleged constitutional violations caused by a deliberate indifference to serious medical need.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[8] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This shield is known as qualified immunity. Previously, Saucier v. Katz required district courts to first determine whether a plaintiff has made out a violation of a constitutional right, and second, if so, decide whether the right was "clearly established." See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (discussing Saucier v. Katz, 533 U.S. 194 (2001)). Now, Pearson permits

---

[7] Plaintiff does not phrase his individual capacity claims in terms of supervisory liability, so it is not discussed.

[8] Each Count of the Complaint asserting a Section 1983 claim contains an allegation that the respective Sheriff was acting within the scope of his discretionary functions. (See Complaint ¶¶ 81, 88, 95.)

17

district courts to consider the qualified immunity prongs in the order of their choosing. See id. at 236. The Court will nonetheless begin with the question of whether Plaintiff has made out a violation of a constitutional right.

In the context of a deliberate indifference to serious medical need violation, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."[9] Estelle v. Gamble, 429 U.S. 97, 105 (1976). The Eleventh Circuit has set out three necessary components to a such a claim. See Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). They are:

> (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury.

Id. (quotation omitted) (alteration in original). The second component is split into another three factors:

> (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.

Id. at 564 (quotation omitted) (alteration in original).

---

[9] "The Fourteenth Amendment governs claims of medical indifference to the needs of pretrial detainees while the Eighth Amendment applies to claims of convicted prisoners." Youmans, 626 F.3d at 563 n.6. However, the same standard is applied in either case, and the Eleventh Circuit "consider[s] as precedents cases decided under either amendment." Id.

18

There is no evidence that any of the Sheriffs had subjective knowledge of a risk of serious harm to Plaintiff. Sheriff Sheffield was unaware of the reason for Plaintiff's medical supervision while at the Dodge County Jail, and Telfair County officials never communicated with Sheffield regarding Plaintiff's medical needs. (See Sheffield Dep., Doc. No. 66-5, at 14-16; Moon Dep. at 99; Riddle Dep., Doc. No. 66-7, at 89.) Sheriff McLemore likewise lacked subjective knowledge of a risk of serious harm to Plaintiff; McLemore did not even know Plaintiff was in the Ben Hill County Jail until he saw Plaintiff just before Plaintiff was transported to Grady Memorial Hospital. Sheriff Steverson's only interaction with Plaintiff was while Plaintiff was receiving medical care. (See McRae Dep. at 30.)

Additionally, regardless of Plaintiff's failure to respond to the qualified immunity arguments, the Court can discern no evidence on the record that the Sheriff Defendants disregarded any risk of serious harm or acted with more than gross negligence. The record reflects that Plaintiff received medical care numerous times in the custody of each Sheriff. Thus, summary judgment in the Sheriff Defendants' favor is appropriate on Plaintiff's Section 1983 claims against them in their individual capacities.

## V.   CONCLUSION

Upon the foregoing, the summary judgment motions (doc. nos. 53, 66, 68) are **GRANTED IN PART**.  Specifically, the Clerk is **DIRECTED** to **ENTER JUDGMENT** on all of Plaintiff's 42 U.S.C. § 1983 claims.  Plaintiff's claims against the Doe Defendants are **DISMISSED WITH PREJUDICE**.  The Parties are invited to submit summary-judgment-type evidence regarding the amount in controversy threshold within **twenty-one (21) days** of this Order.  Ruling is **DEFERRED** on Plaintiff's state law claims against named Defendants.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of September, 2020.

_____
UNITED STATES DISTRICT JUDGE